So we'll begin with 20-1549, U.S.A. v. Daniel Deandrade. Good morning, Your Honor. Can I start? Please. Yes. May it please the Court, my name is Daryl Fields, and I represent Mr. Deandrade. I'm going to start with the issue in the supplemental brief, and that is the fact that the government erroneously told the District Court that Mr. Deandrade committed a violent assault on a prison guard during his incarceration. This inflammatory allegation wasn't true, however. Mr. Deandrade had not attacked, Mr. Deandrade had not done anything to any corrections officer. He had an incident with another inmate back in 2012 in which no serious injury resulted, and he had no other significant incidences since then. But the District Court referred to this falsehood twice in its order, and only four pages of the Court's seven-page order even concerns the First Step Act. But the Court referred to this false allegation in its statement of the facts. At the very conclusion of its recitation of the relevant facts of the case, it states that while incarcerated, the defendant was involved in one violent incident involving an assault on an officer without serious injury in 2012. And then in this discussion, when the Court denies release under the First Step Act, the Court does not first determine he's eligible. The Court decides that even if he were eligible, he wouldn't deserve being released because his release would pose a danger to the community. And her confirmation of the fact that his release would pose a danger to the community was the reference to this allegation that he had assaulted a correction officer. The District Court states that the defendant was involved in a violent incident involving an assault on a correction officer as recently as 2012. And the Court goes on to say this confirms the conclusion that's on 169 of the appendix. The only other facts that the Court relies on to find that Mr. DeAndreides released would pose a danger to the community are very old. One is the current offense, which is a non-violent crack cocaine offense at a court that occurred 14 years ago. And as far as criminal history, his two felony convictions occurred almost 30 years ago when he was a teenager. He had an assault back in 1990, according to paragraph 33 of the precinct report, when he was 15 years old. That was one felony. His second felony was a criminal possession of a weapon at age 18 over 27 years ago in May of 1993. Your first three minutes have expired. How old is he now? He's 46 years old now, Your Honor. And since 18, his only convictions, other than the instant offense, were three misdemeanor convictions for which he served a time-served sentence of about six days, he got a conditional discharge on a second misdemeanor, and on a third  misdemeanor, he was released on parole. So this false allegation about him assaulting a police officer, a correction officer, was the most recent event the court had to rely on, which is why it states that this confirms the conclusion that his release would pose a danger to the community. As she says, he did it as recently as 2012. As I said, his felony convictions occurred back in the early 1990s when he was a teenager. Now, the government says that erroneously telling a judge that a defendant assaulted a correction officer is equivalent to saying the defendant had done the same thing to an inmate. There's a big difference between the two allegations. Eight USC, 18 USC 111 makes it a felony to just have physical contact with any officer of an agency of the United States. And that results in an eight-year maximum sentence. And that sentence will be enhanced to 20 years if there's any bodily injury. That's 18 USC 111. And that's not seriously bodily. That's not serious bodily injury, just bodily injury, which can be just a bruise, an abrasion, or any injury to the body, no matter how temporary, according to 18 USC section 35H4. So the federal statutes show what we know intuitively, which is that an allegation that an inmate assaulted a correction officer is a very serious inflammatory act, and the fact that the government, the fact that it caught the court's attention, even though the government only put in a footnote, shows its power, even though the government just put in a footnote and mentioned it once, the court put this false allegation in its statement of facts, and as I say, it concludes the court's statement of facts on page 167. Now, Mr. Fields, Judge Cabrera is here. Oh, yes. Good morning. I mean, good afternoon. Sorry. Yeah. You raised, you raised this argument basically in your supplemental brief. And you argue that remand is warranted. And I'm hoping now from your brief, because the district court decision to deny Mr. has been affected by the government's misrepresentation that appellant had assaulted a corrections officer, unquote. Yes, sir. Excuse me. Yes, sir. All right. So I think we understand the argument, but what, what's the basis in the record for that, for the speculation, but by the very terms of your brief, it's a speculation, right? Well, the court's decision, how much weight the court gave it, it can't tell. It's a very short opinion, Your Honor. But what is a fact is that places this fact, this falsehood statement of facts, that in itself is significant, particularly as it comes at the end of its statement of facts, the court found it significant. And it's the most recent event in the court's recitation of its statement of facts, and the court ultimately denies relief because it concludes that releasing Mr. DeAndres would pose a danger to the community. So the only thing current, the only thing possibly current that show the reflects, the only thing that could possibly reflect this current, this current dangerousness is this false allegation. I mean, that's what the court's decision, decision uses. And the court in a footnote, when it says that the assault on the correction officer's confirmation of that releasing DeAndres would endanger the community, this is the phrase as recently. So it is in the court's decision. It forms the basis of the court's view of the facts. It's the most recent event in the court's statement of the facts and the court uses it as confirmation for its reason for denying him release. Mr. Fields, the reason why you didn't raise this in your initial brief? Oh, yes. Um, defense counsel didn't object to this. Uh, right. I mean, there was nothing. I mean, you didn't make the, you didn't make the district court aware of the error. Did you? Defense counsel was not aware of the, uh, of the issue. Defense counsel wasn't aware. So there was no objection. So we acknowledge that plain error should apply, but I think it should be a relaxed plain error because court uses plain, a relaxed plain error in the sentencing context because the cost of the remand isn't, isn't that much on judicially. And it's done. So in cases where, like for instance, in a supervised release condition, the defendant has no notice of it. Well, in this case, defense counsel had no notice that the government was representing knowledge to defense counsel, but to the court, a falsehood. Excuse me, your eight minutes have expired. What do you, what do you mean? He didn't, he had no knowledge of it. Didn't the defense counsel get a copy of the government submission? Yes. But the government was interpreting a government document. Well, I would think defense counsel would have asked his client. Wouldn't he? Not well, counsel would have taken the government's word for it, particularly since the government wasn't, wait, wait, wait, Mr. Fields, wait a second. You're asking us now on a supplemental brief and raising an issue that you admit was not, was, is on a plein air basis. And now you're telling me that defense counsel is excused from not raising the issue from his, with his client. When he was made aware of, of the, of the government's position with regard to that ultimately proved to be in your view, determinative and perhaps not presented to the court to reconsider the determination, your honor. I have positions up here. You're not, now you're here on a supplemental brief asking us to send this back to a district court on, on something that the defense counsel never raised with his client that might be air where in the record, do we know for a fact that this is air? Oh, the government. And it's a letter that is submitted to the court in January, uh, in early January, it's, it's an appendix, it's attached to the supplemental brief as an appendix acknowledged that it was an air acknowledging it wasn't the case. It looks like defense counsel assumed it was true what the government said. Cause the government was interpreting a BOP document. I mean, the client, only when the client read my brief, did he notice the error? It was in a footnote, you know, it was a footnote in the government, in the government's, um, submission to the court and clients don't necessarily. Clients don't necessarily read footnotes. I know lawyers that don't necessarily pay. I understand. Mr. Kills. Thank you. Thank you. Um, I may interrupt, uh, you've reserved two minutes and Herman, and then we'll come back to Mr. Herman. Good afternoon. Your honors may please the court. My name is Michael Herman and I represent the United States in this appeal and in the district court. Judge Prescott did not abuse her discretion in declining to reduce the Andrade sentence under the first step act. Rather the district court provided ample justification for declining to reduce the defendant sent already below guideline sentence. Judge Prescott noted that the underlying conduct was serious involving multi kilogram quantities of crack cocaine distributed in two separate locations over a substantial period of time. She wrote quote, the defendant engaged in drug dealing on a massive scale in two cities over an extended period of time, wrecking untold damage on those communities. That's on page 169 of the appendix. Judge Prescott also detailed the defendant's substantial criminal history, including an essentially unbroken series of criminal conduct from when the Andrade was 15 years old until his arrest in this case in his 30s, placing him in criminal history category of five. And finally, Judge Prescott noted that the defendant's sentence was below the guidelines range both at the time sentence was imposed by Judge Sand and below the guidelines range that would apply today. This court has repeatedly recognized that these are the types of factors a Now, faced with this clearly reasonable exercise of the district court's discretion, defense counsel has focused now his entire oral argument essentially on a minor misstatement related to the defendant's prison disciplinary history. While I regret mischaracterizing the Andrade's prison assault as one on an officer rather than on an inmate, this minor factual error was harmless in light of the many reasons provided by Judge Prescott. Have you taken the time to notify Judge Prescott of your error? Yes, Your Honor. Subsequent to learning of it, Mr. DeAndrade moved the court for a compassionate release in connection with my opposition to that motion. I did point out this error to Judge Prescott, Your Honor. But we don't have that on the record, correct? Uh, that it is on the district court's docket, Your Honor, but not on the record. Okay. Thank you. And I would also like to point out that I attached the entire prison disciplinary record to the district court submission. It was before defense counsel and the court and they were free to read it and interpret it as they saw fit. And that's on page starting on page 101 of the appendix. Um, in addition, the government below specifically noted it did not believe Mr. DeAndrade's disciplinary history should have significant bearing on the matter. And Judge Prescott did just that. After briefly mentioning the assault in the fact section of her opinion, her sole reference and discussion section relegated it to a footnote, noting that it merely confirmed her entirely reasonable conclusion that the defendant posed a danger to the community, which again, was just one of the many reasons that Judge Prescott gave for declining to reduce Mr. DeAndrade's sentence. Still, this prison assault reference, Judge Prescott did not emphasize whom he assaulted or place more than a passing reference to it. There is simply nothing in Judge Prescott's opinion to indicate that she found the identity of the victim of the defendant's assault to be of a matter of significance. Under these circumstances, Your Honor, the government submits there is no basis to believe that the difference between assaulting an officer or an inmate was material to Judge Prescott's analysis and certainly does not satisfy the high bar necessary for this court to find plain error. Unless Your Honors have any further questions, the government would rest on its submissions. Thanks very much. Mr. Fields, you have reserved two minutes. Yes, Your Honor. This is not a minor factual misstatement, as was the case in Moore, where the court just got the difference, just got the timeline, just made an error with respect to the timeline of when an infraction occurred. But as this court stated, the infraction was just as serious as the judge regarded it, and the infraction actually did occur. This infraction didn't occur. He did not commit a violent assault on a correctional officer. As I said, that's a federal felony, any physical contact with a correctional officer under 18 U.S.C. 111 and an allegation of assaulting a correctional officer. Say something about your ability to function in a society where there's a scuffle with an inmate, where there's no serious injury, does not say anything about your ability to function in society. That could have been about any number of circumstances. The court's order, when it talks about things about the guideline range and that sort of thing, there's a point that I had to address in that opinion, which is that the defendant was moving for a reduction based on amendments to the guidelines under 3582C2, and he was ineligible for the reasons stated about his sentencing guidelines not having been affected by any change. And also, on the initial point in the opening brief about did it was error for the judge not to first consider the eligibility of the defendant's oral relief, we stand by that. And we do not believe that the court's decision in Smith has disposed of that argument. In Smith, the court did say we see no reason why it is improper for Judge Prescott to assume without deciding that defendant Gadsden was eligible, given that she makes clear that the defendant's eligibility would not have made a difference in her exercise discretion. But the court added, we do not address whether, in another case, it might be an error for the district court to not first consider eligibility. And in that case, in Smith, the defendant made only a very perfunctory argument. Made just a conclusory statement on page 26 of his brief. He didn't make a real argument about how this action would have affected the court's determination about how to exercise her discretion. On page 26, all he says is, another reason for remand, and for doubting that the court engaged in a 35-53A analysis, is that the district court did not follow a two-step process. It bypassed it, and blah, blah, blah. But it's just a very, there's no case citation. There's no discussion of how it would have affected the court's decision. He doesn't argue that the court's decision would have been anchored. Yes, Your Honor? The defendant in Smith makes no argument. So, this court's decision in Smith, it's a statement of footnote 3 in Smith, we do not believe opposes that argument. And finally, when it comes to the false statement, it just won't say, it's not just that the time imprisonment is determined by accurate information. The district court, in making these determinations about whether to keep somebody in jail, also has a right to make that determination based on accurate information. The First Step Act is part of a bipartisan statute, two statutes, that determine that the charges were overly harsh, and that they were discriminatory, and fell disproportionately on minorities. And two presidents, in two different Congresses, thought it was that important. So the judge, Judge Prescott, was entitled, in making that decision, in a lot of these important policy considerations, he was entitled to make that decision based on accurate information,  Thank you, Your Honor. Do you have any questions? No, thank you. Thanks, Mr. Fields. Judge Walker, any questions? No, I'm fine. Okay, and Judge Wesley? No, thank you, Mr. Fields. Thank you, Mr. Herman, very much. Thank you. Thank you. We'll reserve decision in 20-1549, USA v. Dan Bradek. The other case on our calendar today is on submission. And that is U.S. v. Robinson, 20-2280. Madam Clerk, would you please adjourn court? Court is adjourned.